IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21–cv–03403–RM–MDB

WILLIS EARL JENKINS, JR.,

    Plaintiff,

v.

ELIZABETH O'NEAL, Head of Classification, and
RAVENKAMP, Deputy, Disciplinary Hearing Officer,

    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Maritza Dominguez Braswell**

    Before the Court is Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) and (6), and 41(b). (["Motion to Dismiss" or "Motion"], Doc. No. 49.) Subsequent to the filing of Defendants' Motion, Plaintiff filed My Objection to Motion to Dismiss as Recomme[nded], which the Court construes as Plaintiff's response to the Motion. (["Response"], Doc. No. 71). Defendants have replied to Plaintiff's Response. (["Reply"], Doc. No. 72.) For the following reasons, the Court **RECOMMENDS** the Motion to Dismiss be **GRANTED in part and denied in part**.

### I.    SUMMARY FOR *PRO SE* PLAINTIFF

    The Court is recommending that the Defendants' Motion to Dismiss be granted, but only with respect to your *official* capacity claims. An official capacity claim is essentially a claim against the municipality and it requires the plaintiff to identify a policy or custom that resulted in

the alleged constitutional violation. Because your complaint does not contain such allegations, the Court is recommending dismissal of the official capacity claims. However, the Court is recommending that your *individual* capacity claims against both Defendants be allowed to proceed. This is only a high-level summary of the Court's decision, the full decision is set forth below, including information about your and Defendants' right to object to this recommendation within a set period of time.

## II. STATEMENT OF THE CASE

*Pro se* Plaintiff, a pretrial detainee at the El Paso County Criminal Justice Center ["CJC"][1], initiated this action on December 20, 2021, asserting deprivation of his constitutional rights pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) Plaintiff filed amendments on January 5 and 20, 2022, adding several parties and claims. (Doc. Nos. 4; 9.) At the direction of the Honorable Gordon P. Gallagher, Plaintiff filed his First Amended Complaint on February 14, 2022, addressing certain pleading deficiencies. (Doc. Nos. 11; 12.) On March 3, 2022, Judge Gallagher, acting *sua sponte*, recommended that Plaintiff's First Amended Complaint be dismissed without prejudice "with the exception of the Fourteenth Amendment due process claim asserted against Defendants Ravencamp and O'Neil (sic) based on Plaintiff's placement and continued detention in solitary confinement." (Doc. No. 18 at 14.) The Honorable Lewis T. Babcock adopted the recommendation in full and directed Plaintiff to file "a second amended

---

[1] Plaintiff appears to indicate that since this case was initiated, he was found not guilty of the charges for which he was being detained. (Doc. No. 23 at 12 ("Jury trials tentatively took place, those jurors unanimously pronouncing me 'not guilty' on both occasions.").) However, Plaintiff apparently later returned to CJC. (*See* Doc. No. 49 at 3.) On February 2, 2023, Plaintiff submitted a change of address notification with the Court, indicating that he is now at Denver Reception & Diagnostic Center. (Doc. No. 80.)

Prisoner Complaint … in which Plaintiff asserts a single claim for relief against Defendants Ravencamp and O'Neil (sic)." (Doc. No. 20 at 2.) Plaintiff complied with this direction, filing a Second Amended Complaint on April 11, 2022. However, Judge Gallagher, again acting *sua sponte*, identified new pleading deficiencies and directed Plaintiff to file a Third Amended Complaint. (Doc. No. 22.) Plaintiff's Third Amended Complaint ["Complaint" or "operative Complaint"], filed May 23, 2022, is the operative Complaint in this matter. (Doc. No. 23.)

Though the Third Amended Complaint continues to reference alleged deprivations of other Constitutional rights, in light of Judge Babcock's order, the Court only reviews Plaintiff's allegations through the lens of a Fourteenth Amendment Due Process claim. (*See* Doc. Nos. 20; 23.) The Court construes the following allegations against each Defendant, both of whom are sued in their individual and official capacities.[2]

**A. Defendant O'Neal**

At the time of the operative Complaint, Plaintiff alleged he had been housed "in isolated solitary restorative confinement punitively and despairingly since July 2021 without any signs of abdicating." (Doc. No. 23 at 7.) Plaintiff alleges that he is in solitary confinement "twenty three hours a day with only one hour out of my cell each day, and not a single outdoor recreation [activity]." (*Id.*) Plaintiff labels this housing as "inhumane" and alleges that CJC "disregard[s]" or acts intentionally to harm his mental health.[3] (*Id.*)

---

[2] Plaintiff attempts to organize his Third Amended Complaint into two parts: allegations against Defendant O'Neal (Doc. No. 23 at 5–14) and allegations against Defendant Ravenkamp. (*Id.* at 15–19.)

[3] Throughout the Complaint, Plaintiff repeatedly references the alleged physiological difficulties he endured while in long-term solitary confinement. (*See generally* Doc. No. 23.)

3

Defendant O'Neal is the "head of classification" at CJC. (*Id.* at 5.) Plaintiff alleges that as the "supervisor" in charge of classification, Defendant O'Neal, "at her whim," kept him "unusually confined to isolated solitary restrictive confinement" after "falsely and loathsomely mislableing (sic) me a sexual predator although I have never in my life ventured any such premises relating me to anything of the sort in my life." (*Id.* at 6, 10; *see also Id.* at 13 ("[T]he unabated reason in which classification found just sanctuary with unvoluntarily (sic) placing me in such an illegal state pretained (sic) directly to these allegations, wh[ich] classification utilized to mis-lable (sic) me as a high-risk sexual predator.").)[4] Plaintiff asserts that he is not a "high risk sexual predator" and alleges that Defendant O'Neal violated his rights by "placing me in punitive isolated segregating housing … without giving me an opportunity to be heard …." (*Id.* at 10.)

Plaintiff further alleges that, while detained, subsequent "reviews" of his housing status were insufficient to satisfy due process:

> [a]llegedly, I've been having these so called housing reviews, and evidently upon management of such, the reviews conclusions campaign my non-movement from … isolated solitary restrictive confinement. I do say, my presence should indeed be required when such alleged reviews take place, alongside some type of explanation given to me and proof of such detailing the recommendations of each review

(*Id.* at 11.) Plaintiff also alleges that he was not given the ability to "respond to classification kites (messages)" to seek more information or challenge his classification (*Id.* at 5.)

**B. Defendant Ravenkamp**

---

[4] Plaintiff does not specify the "allegations" upon which Defendant O'Neal allegedly based her classification decision. It is not clear to the Court whether these allegations stemmed from Plaintiff's criminal charges or from Plaintiff's actions at CJC. Plaintiff does not specify the crimes he was charged with.

Defendant Ravenkamp is the "disciplinary hearing board officer" at CJC. (*Id.* at 19.) In this role, Plaintiff alleges Defendant Ravenkamp "ceaselessly and wrongly distributed confinement time upon me without the required case evaluation on a balanced order of facts …." (*Id.* at 15.) Plaintiff further alleges that in leveling discipline, Defendant Ravenkamp "simply just sign[ed] off [on] accounts without extinguishing proper mannerisms regarding due process …." (*Id.* at 16.) Plaintiff labels the accounts relied on by Defendant Ravenkamp as "erroneous" and alleges that he "just bitterly administer[ed] out confinement time in inexcusable excesses." (*Id.* at 17.) Plaintiff acknowledges two "disciplinary infractions in which [he] was found guilty," saying he was given five and fifteen days in solitary detention for the infractions. (*Id.* at 18.) Plaintiff goes on to allege, however, that he was placed in solitary confinement for an additional "sixty unjustified days."[5] (*Id.*)

***

Defendants move to dismiss Plaintiff's individual capacity claims, arguing that Plaintiff has failed to plausibly allege a Fourteenth Amendment violation, or in the alternative, that the Complaint should be dismissed because Defendants O'Neal and Ravenkamp are entitled to qualified immunity. (Doc. No. 49 at 5–8.) Defendants further argue that the official capacity claims should be dismissed because the Complaint fails to allege a specific CJC policy or custom that caused his injury. (*Id.* at 8–9.) Defendants also contend the Complaint should be dismissed based on Plaintiff's failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

---

[5] Plaintiff appears to contend that his time in solitary confinement was based in part on being mislabeled as a sexual predator and in part based on certain dangerous or disruptive things he did while a detainee. However, the Complaint is vague and confusing on this front. It provides little attempt to identify which periods of Plaintiff's time in solitary confinement were predicated on what basis nor which Defendant was responsible for which periods of confinement.

5

### III. LEGAL STANDARD

**A. Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a Rule 12(b)(6) motion to dismiss, means that the plaintiff pleaded facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," *i.e.,* those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, the claim survives the motion to dismiss. *Id*. at 679.

That being said, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

**B. Qualified Immunity**

"The doctrine of qualified immunity protects government officials from individual liability for actions carried out while performing their duties so long as their conduct does not violate clearly established constitutional or statutory rights." *Hammond v. Koger*, No. 18-CV-00577-RBJ-NYW, 2019 WL 652597, at *2 (D. Colo. Feb. 15, 2019) (citing *Washington v. Unified Gov't of Wyandotte Cty.*, 847 F.3d 1192, 1197 (10th Cir. 2017). "When a defendant asserts qualified immunity … the burden shifts to the plaintiff to establish (1) a violation of a constitutional right (2) that was clearly established." *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). In other words, when a defendant moves to dismiss a plaintiff's § 1983 claim based on qualified immunity, "the plaintiff must allege sufficient facts that show—when taken as true—the defendant plausibly violated his constitutional rights, which were clearly established at the time of violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012); *see Robbins v.*

7

*Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (making clear that a qualified immunity defense does not impose "heightened pleading standard" but "the complaint must meet the minimal standard of notice pleading as articulated by the Court in *Twombly*").

### C. Federal Rule of Civil Procedure 41(b)

Federal Rule of Civil Procedure 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." If a court determines the Plaintiff has failed to prosecute his case, before it may order dismissal with prejudice, it must apply the five factors outlined in *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992). The five factors are: "1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Mallett v. Martinez*, No. 14-CV-02198-CMA-MJW, 2015 WL 4624552, at *1 (D. Colo. Aug. 4, 2015) (citing *Ehrenhaus*, 965 F.2d at 921).

### D. *Pro Se* Plaintiff

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court

may not assume that a plaintiff can prove facts that have not been alleged or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (stating that a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### IV.   ANALYSIS

**A. Failure to Prosecute**

In their Motion, Defendants first argue that Plaintiff's Complaint should be dismissed for failure to prosecute, pursuant to Federal Rule of Civil Procedure 41(b). (Doc. No. 49 at 4–5.) Defendants' argument is focused on a period between June 15 and August 5, 2022, during which mail sent to Plaintiff was repeatedly returned as undeliverable and Plaintiff made no filings in the case. (*Id.*; *see* 21-cv-03403-RM-MDB.) Defendants specifically note Plaintiff's failure to comply with the Honorable Nina Y. Wang's Minute Order requiring Plaintiff to update his address with the court on or before July 18, 2022, after being released from CJC. (Doc. No. 49 at 5; Doc. No. 40.) Judge Wang warned that a failure to comply "may result in this court issuing an Order to Show Cause as to why this case should not be dismissed without prejudice for failure to prosecute." (Doc. No. 40 at 1–2.) Plaintiff never updated his address with the court; however, he began receiving case-related mail sometime in August, after returning to CJC. (*See* 21-cv-03403-RM-MDB.) An order to show cause was never issued. (*Id.*)

9

The Court will decline to recommend dismissal on these grounds. First, the Court notes that Judge Wang's Minute Order did not threaten an immediate recommendation of dismissal but only that an order to show cause "may" be issued. (Doc. No. 40.) None ever was. Additionally, since he returned to CJC, Plaintiff has been invested in prosecuting this case, making several filings with the Court and appearing at the September 21, 2022, Status Conference.[6] (Doc. No. 63.) Though Plaintiff was admittedly absent from the case for multiple months, this period has since passed, and Plaintiff has shown significant interest in pursuing his claims.

Accordingly, with a fully briefed Motion to Dismiss pending and considering "the judicial system's strong predisposition to resolve cases on their merits," the Court does not find it appropriate to recommend dismissal of this action pursuant to Rule 41(b). *Ehrenhaus*, 965 F.2d at 921.

**B. Plaintiff's Individual Capacity Claims**

In connection with his placement and extended detention in solitary confinement at CJC, Plaintiff alleges Defendants O'Neal and Ravenkamp violated his Fourteenth Amendment due process rights.

"[T]he Fourteenth Amendment's due process guarantee offers [pretrial] detainees some protection while they remain in the government's custody awaiting trial. *Blackmon v. Sutton*, 734 F.3d 1237, 1240 (10th Cir. 2013). To this end, "[d]ue process requires that a pretrial detainee not be punished prior to a lawful conviction." *Peoples v. CCA Detention Centers*, 422 F.3d 1090, 1106 (10th Cir. 2005). Indeed, "punishment is *never* constitutionally permissible for

---

[6] As noted above, Plaintiff also submitted a notice address change when he was recently relocated to Denver Reception & Diagnostic Center. (Doc. No. 80.)

presumptively innocent individuals awaiting trial." *Blackmon*, 734 F.3d at 1241 (emphasis in original) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

However, "the government may subject those awaiting trial to the conditions and restrictions of incarceration so long as those conditions and restrictions do not amount to punishment," and so long as those conditions and restrictions serve a "legitimate government purpose." *Peoples*, 422 F.3d at 1106. In other words, when holding a pretrial detainee, the use of "[r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Bell*, 441 U.S. at 540. Indeed, "the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Id.*

To determine whether the restrictions imposed on a pretrial detainee have passed from constitutionally acceptable to constitutionally impermissible, the Court asks two questions. First, "we must ask whether an 'expressed intent to punish on the part of detention facility officials' exists." *Blackmon*, 734 F.3d at 1241 (citing *Bell*, 441 U.S. at 538). If a pretrial detainee plaintiff demonstrates an expressed intent to punish, "liability may attach." *Id.* Second, even if no expressed intent to punish exists, "a plaintiff may still prove unconstitutional punishment by showing that the restriction in question bears no reasonable relationship to any legitimate governmental objective." *Blackmon*, 734 F.3d at 1241 (citing *Bell*, 441 U.S. at 539).

Defendants contend that Plaintiff has failed to present facts sufficient to plausibly establish they violated his Fourteenth Amendment rights. (Doc. No. 49 at 5–7.) In the alternative, assuming *arguendo* that Defendants did violate Plaintiff's constitutional rights, Defendants argue that the law was not clearly established at the time of the violation of those rights and, thus, they are thus entitled to qualified immunity. (*Id.* 49 at 7–8.)

**1. Plaintiff has plausibly alleged a due process claim under 42 U.S.C. § 1983**

As it must at this stage, the Court takes as true the allegations that:

i. As a pretrial detainee, Plaintiff spent approximately 280 days in solitary confinement. (Doc. No. 3 at 7.) Solitary confinement included 23 hours in his cell and no time outdoors allowed. (*Id.*)

ii. Defendant O'Neal, acting with intent to punish, incorrectly classified Plaintiff as a "high risk sexual predator," placing him in solitary confinement without the opportunity to be heard or otherwise challenge the classification. (*Id.* at 6, 10.)

iii. Plaintiff was not allowed to personally challenge his housing situation at follow-up reviews, nor was he able to use kite messages to obtain more information or challenge his classification. (*Id.* at 5, 11.)

iv. Defendant Ravenkamp added 60 days to Plaintiff's solitary confinement without presenting justification. (*Id.* at 18.)

The Court acknowledges that Plaintiff does not provide much in the way of factual detail to support his claims. Indeed, the Complaint uses many pages to assert relatively sparse allegations. However, upon review, the Court finds the allegations are sufficient to survive a 12(b)(6) motion.

Plaintiff's allegations ring primarily in an "expressed intent to punish" theory. Broadly, Plaintiff alleges that Defendants intentionally placed and kept him in solitary confinement on false pretenses. (*See* Doc. No. 23 at 10 ("Elizabeth O'neil (sic) acts with the intent to punish me …").) Plaintiff does not present allegations suggesting that solitary confinement of "high risk sexual predator[s]" would be inappropriate or otherwise bear no reasonable relationship to a government objective. Likewise, Plaintiff does not appear to reject the notion that a pretrial detainee could be reasonably placed in solitary confinement based on substantiated disciplinary allegations, but instead contends prison officials relied on mere allegations, without caring enough to investigate properly.

Other courts have found similar allegations sufficient. For example, in *Meek v. Koonce*, the district court declined to dismiss a pretrial detainee's due process claim related to "23 and 1" solitary confinement, which was supported by similarly minimal factual detail. No. 14-CV-01335-MSK-KLM, 2015 WL 4944076 (D. Colo. Aug. 20, 2015), *supplemented*, No. 14-CV-01335-MSK-KLM, 2015 WL 5000731 (D. Colo. Aug. 24, 2015). In *Meek*, the plaintiff alleged after being "cleared of any wrong doing," he "was placed in administrative segregation without any notice of the reason for his placement [or opportunity to be heard]." *Id.* at * 4. Based on these allegations, the court found "it [was] permissible to infer from Mr. Meek's allegations that the placement was purposeless," and thus done with the intent to punish. *Id*; *see also Session v. Clements*, No. 14-CV-02406-PAB-KLM, 2016 WL 820978, at *7 (D. Colo. Jan. 21, 2016), *report and recommendation adopted*, No. 14-CV-02406-PAB-KLM, 2016 WL 814715 (D. Colo. Mar. 1, 2016) (declining to dismiss a pretrial detainee's due process claim based on his placement in segregation and saying, "[b]ecause the analysis of his claims turns on the

government's intent with regard to Plaintiff's placement, the reason for which Plaintiff asserts he was never made aware, the Court finds it is permissible to infer from Plaintiff's allegations that the placement was purposeless or impermissibly imposed as punishment"); *Hicks v. Bd. of Cnty. Commissioners of Cnty. of Otero,* No. 2:18-CV-0850 JB-JFR, 2021 WL 4976221, at *5 (D. N.M. June 30, 2021) ("Plaintiff has plausibly alleged that Defendants … violated his clearly established liberty interests when they caused him to be placed in solitary confinement for 842 days arguably without notice, hearing, or a meaningful opportunity to challenge his conditions of confinement …."). *Whitenight v. Elbel*, No. 2:16-CV-00646-CRE, 2017 WL 6026379, at *9 (W.D. Pa. Dec. 5, 2017) (finding that "[w]hile Plaintiff's complaint does not paint the entire picture of his confinement … [the] allegations require greater factual development in order to determine how these conditions of confinement came to be imposed upon Plaintiff").

Although Plaintiff in this case *was* given an initial explanation for his placement in solitary confinement, he asserts he was never given a meaningful opportunity to be heard or challenge his confinement. Additionally, Plaintiff alleges that any explanation he was provided ahead of placement in solitary confinement was pretextual, and he further alleges that he spent 60 unexplained days in solitary confinement. Thus, taken as a whole, the Court finds the analysis in *Meek* and other similar cases, persuasive.

Should this case reach the summary judgment stage, Defendants will have ample opportunity to present factual evidence refuting Plaintiff's allegations and presenting the Court with evidence tending to show Plaintiff was confined based on a legitimate government interest and not to punish. *See, e.g.*, *Session v. Clements*, No. 14-CV-02406-PAB-KLM, 2018 WL 1531685, at *3 (D. Colo. Mar. 29, 2018) (granting summary judgment to a defendant when "the

uncontroverted evidence demonstrates that [a pretrial detainee's] transfer [to segregated housing] was made for managerial reasons, including Plaintiff's safety"). However, at this stage, the Court finds Plaintiff's allegations sufficient to state a claim under 42 U.S.C. § 1983.

### 2. Plaintiff's claim concerns a clearly established right

Because Defendants assert a qualified immunity defense, the Court must determine whether Plaintiff's constitutional claim implicates a "clearly established" right. "For a constitutional right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013) (brackets, citation, and internal quotation marks omitted). "In this circuit, a right is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Washington*, 847 F.3d at 1197 (internal quotation marks omitted).

Here, a Tenth Circuit decision is on point.[7] In *Littlefield v. Deland*, the court considered a plaintiff's allegations that, as a pretrial detainee, he was held in solitary confinement for 56 days without the opportunity to be heard "with respect to the nature or duration of his confinement." 641 F.2d 729, 730 (10th Cir. 1981). The Tenth Circuit affirmed the district court's entry of

---

[7] As Defendants point out, Plaintiff's Response does not substantively deal with their qualified immunity defense nor point to any Supreme Court or Tenth Circuit cases clearly establishing the right at issue. However, the Tenth Circuit has reversed a district court grant of qualified immunity based on a *pro se* plaintiff's failure to direct the court to an on-point case. *See Ali v. Duboise*, 763 F. App'x 645, 651–52 (10th Cir. 2019) ("[T]he district court further determined Ali had failed to identify a 'case that would have put Lambert on notice that his conduct [was unconstitutional] …. We conclude, however, that clearly established law made it clear Lambert's alleged conduct was unlawful."). Accordingly, the Court conducted its own inquiry to determine whether the relevant law was clearly established.

judgment for the plaintiff, finding "that this kind and length of confinement without hearing deprived [the plaintiff] of due process of law" and held that it "amounted to [impermissible] punishment." *Littlefield*, 641 F.2d at 731. Plaintiff's allegations—that as a pretrial detainee he was held in solitary confinement for approximately 280 days on pretextual reasoning and without the opportunity to be heard or challenge his confinement—are sufficiently similar to the allegation in *Littlefield* to put CJC staff on notice. *See Abila v. Funk*, 220 F. Supp. 3d 1121, 1188–89 (D. N.M. 2016).

***

Accordingly, because the Court finds Plaintiff has stated a claim under 42 U.S.C. § 1983, and because Plaintiff's claim concerns a clearly established right, the Court recommends denying the Motion to Dismiss Plaintiff's individual capacity claims.

## C.  Plaintiff's Official Capacity Claims

Plaintiff also brings official capacity due process claims against Defendants. "A claim against a state actor in his official capacity 'is essentially another way of pleading an action against the county or municipality' and is considered under the standard applicable to Section 1983 claims against municipalities or counties." *Cano v. Denning*, No. CIV.A. 12-2217-KHV, 2013 WL 322112, at *5 (D. Kan. Jan. 28, 2013) (quoting *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010)); *see Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law." (internal quotation marks omitted)).

Under *Monell v. Dept. of Soc. Servs. Of City of N.Y.*, a plaintiff who brings claims against a municipality must establish: (1) a constitutional violation by a municipal employee, (2) the existence of a municipal custom or policy, and (3) a direct causal link between the custom or policy and the violation alleged. 436 U.S. 658, 694 (1978). Because the Court has already found that Plaintiff has sufficiently alleged a constitutional violation by a government employee, the Court moves to the second prong of the analysis.

"A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks omitted).

Here, Defendants argue the Court must dismiss Plaintiff's official capacity claims because he failed to identify an official "policy or custom" upheld by CJC related to his allegations. The Court agrees. While the Complaint spends significant time discussing Plaintiff's time in solitary confinement and his allegations against the individual Defendants, it does not attempt to connect his experience to any policy or custom held by CJC. (*See generally* Doc. No. 23.) Plaintiff brings no allegation that his confinement is connected to a formal CJC policy, that Defendants have "final policymaking authority," or that Defendants made decisions that were

"ratif[ied] by final policymakers. Likewise, Plaintiff does not allege any failure to train or supervise, nor does he connect his allegations to the situations of others in a manner that would suggest CJC has a widespread custom of placing pretrial detainees in solitary confinement under questionable circumstances.[8]

Accordingly, the Court recommends that Defendants' Motion to Dismiss be granted insofar as it relates to Plaintiff's official capacity claims.

## V.  CONCLUSION

**WHEREFORE**, for the foregoing reasons, this Court respectfully

**RECOMMENDS** that Defendants' Motion to Dismiss (Doc. No. 49) be **GRANTED IN PART AND DENIED IN PART** as follows:

1. Defendants' Motion to Dismiss be denied as to Plaintiff's individual capacity claims.

2. Defendants' Motion to Dismiss be granted as to Plaintiff's official capacity claims.[9]

---

[8] In his Response, Plaintiff says, "I'm saying and I have been saying there is no policy or custom which allow such unconstitutional manuvers (sic) … [that have] plac[ed] me in insolated solitary confinement …." (Doc. No. 70 at 18.) Plaintiff may be confused about the relevance of a policy or custom with regard to an official capacity claim, but such confusion cannot rescue the claim. *See Frey v. Reams*, 2018 WL 582400, *6 (D. Colo. January 29, 2018) ("Adequately alleging municipal liability under § 1983 can certainly be challenging, but the pleading requirements under *Twombly* are not negotiable.").

[9] Usually, considering that Plaintiff proceeds *pro se*, the Court would be inclined to recommend dismissing these claims without prejudice. However, because Plaintiff has already amended his Complaint several times (*See* Doc. Nos. 4; 9; 12; 13; 21; 23) and seeing as how Judge Gallagher provided a brief explanation of a *Monell* claim in his March 3, 2022, Recommendation (Doc. No. 18 at 9), the Court recommends dismissing these claims with prejudice.

The Clerk is directed to send a copy of this Recommendation to Plaintiff at:

> Willis Earl Jenkins, Jr.
> 0277126
> Denver Reception & Diagnostic Center (DRDC)
> P.O. Box 392004
> 10900 Smith Road
> Denver, CO 80239

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

19

timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 6th day of February, 2023.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge